UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civ.  04-4002-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAKOTA WINGS CORPORATION, | ) | |
| INC., | ) | |
| | ) | FINDINGS OF FACT AND |
| Defendant. | ) | CONCLUSIONS OF LAW |
| | ) | |
| and | ) | |
| | ) | |
| SOUTH DAKOTA STATE | ) | |
| UNIVERSITY, an instrumentality of | ) | |
| the State of South Dakota, Pierre, | ) | |
| SD, and its successors or assigns, | ) | |
| | ) | |
| Garnishee. | ) | |

Plaintiff, the United States of America, filed a complaint alleging that

defendant, Dakota Wings Corporation, Inc., violated the Safe Drinking Water

Act.  A default judgment was entered on May 1, 2001, and a civil penalty was

assessed against Dakota Wings in the amount of $9,500 plus interest.

Dakota Wings has not paid the penalty, which had compounded to

$11,527.86 as of March 30, 2005.

On March 30, 2005, the court granted plaintiff a writ of continuing

garnishment to recover the lease payments paid by SDSU to Dakota Wings.

Dakota Wings contends the lease is between SDSU and John Morin, the son

of the owner of Dakota Wings, and therefore the lease payments are not subject to garnishment.  Plaintiff requests that the court pierce the corporate veil and garnish the lease payments.

## FACTS

The court finds the following facts by a preponderance of the evidence: On April 11, 1991, the South Dakota Secretary of State issued a certificate of incorporation for Dakota Wings Corporation, Inc.  Pl. Ex. 7.  Paul and JoAn Morin were the incorporators.  The company was formed to provide aviation services and maintenance.  Id.  John Morin is the son of Paul and JoAn Morin.  The articles of incorporation indicate that John Morin was one of eight directors of Dakota Wings, and that he was to serve as a director until the election of his successor.  Id.  Nothing in the record indicates that another director was elected to replace him.  On April 15, 1991, John Morin signed a waiver of notice of the first meeting of the board of directors of Dakota Wings, along with Paul and JoAn Morin and the remaining directors. Id.  Subsequent minutes or waivers of board meetings list Paul and JoAn Morin as the only directors.  Id.  Article III of the bylaws specifies that the company shall have two directors.  Id.

In 1992, John Morin loaned Dakota Wings $231,000.  He received a security interest in the Morin family home and the hangar that Dakota Wings had built in Madison, South Dakota.  Dakota Wings used the money to

2

repurchase the hangar, which had been seized by Prostrollo Leasing
Company to satisfy a debt owed to Prostrollo by Dakota Wings.  See Pl. Ex. 6.

On November 15, 1993, the State of South Dakota administratively
dissolved Dakota Wings because it failed to file annual reports and fees.
Dakota Wings eventually paid the fees and a penalty, and it applied for
reinstatement on October 1, 1996.  The Secretary of State issued a certificate
of reinstatement on October 11, 1996.

On September 30, 1996, John Morin purchased the hangar from
Dakota Wings for $120,500.  Def. Ex. 3.  On October 1, 1996, Morin entered
into another loan agreement with Dakota Wings in which he agreed to accept
the hangar as credit towards the original $231,000 debt and agreed not to
demand payment of the debt until 1997.  Since then, Paul Morin has
continued to operate Dakota Wings out of the hangar.  John Morin testified
that he helped out occasionally around the shop, but that his father ran the
business.  Dakota Wings does not pay rent to John Morin for use of the
hanger, and John Morin testified that he has not received any payment on
the $231,000 loan.

On October 18, 2004, SDSU entered into a lease agreement for hangar
space at the Dakota Wings airport.  SDSU believed that it had leased the
hangar from Dakota Wings.  (Amended Answer to Writ of Garnishment.)
SDSU later discovered that the lease agreement had been signed by John
Morin in his individual capacity, and that lease payments had been made to

3

John Morin rather than to Dakota Wings.  Id.  SDSU believed that John Morin was the president of Dakota Wings.  The lease agreement provided for a $2000 monthly payment and expired on June 30, 2005.  Pursuant to the garnishment order against Dakota Wings, SDSU withheld the lease payments for April, May, and June 2005.  (Answer to Writ of Garnishment.)

John Morin contends that because he owns the hangar and entered into the lease agreement with SDSU, the garnishment order should be dissolved and he should be permitted to collect the $6000 in lease payments for April, May, and June of 2005.  Plaintiff alleges that John Morin and Dakota Wings are misusing the corporate form to avoid paying the civil penalty assessed for violating the Safe Drinking Water Act and that the corporate veil should be pierced to satisfy the debt owed by Dakota Wings.

**DISCUSSION**

Dakota Wings contends that South Dakota law applies to the analysis of whether to pierce the corporate veil, while the government contends that federal common law applies.  Defendant relies on Stoebner v. Lingenfelter, 115 F.3d 576, 579 (8th Cir. 1997), in which the Eighth Circuit concluded that whether to pierce the corporate veil "is a legal determination that, in our circuit, is governed by state law."  Stoebner was a bankruptcy case involving a fraudulent transfer of corporate assets and did not involve a federal interest comparable to the violation of federal law that gave rise to the case at bar.  See Stoebner, 115 F.3d at 577-78.  In federal question cases, federal choice of

4

law principles apply.  Brotherhood of Locomotive Engineers v. Springfield
Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000).  While state law creates the
corporate form, liability for violation of a federal regulation is a federal
question.  Id.  "The policy underlying a federal statute may not be defeated
by an assertion of state power."  Id. (quoting Anderson v. Abbott, 321 U.S.
349, 365, 64 S. Ct. 531, 88 L. Ed. 793 (1944).  No matter how important the
fiction of the corporate entity is in other contexts, it cannot be used to
undermine federal regulatory procedure.  Id.  Because this case involves
liability for violation of federal law, the court finds that federal common law
applies to the determination of whether or not to pierce the corporate veil.

   The corporate structure is an artificial construct of the law designed to
encourage investment by shielding investors from liability.  N.L.R.B. v.
Greater Kansas City Roofing, 2 F.3d 1047, 1051 (10th Cir. 1993).  "The
insulation of a stockholder from the debts and obligations of his corporation
is the norm, not the exception."  Id.  In extreme circumstances, the court may
pierce the corporate veil and confiscate the personal assets of a controlling
shareholder to satisfy the debts of the corporation.  Id.  The corporate veil,
however, should be pierced only reluctantly and cautiously.  Id.

   In Minnesota Laborers Health & Welfare Fund v. Scanlan, 360 F.3d
925, 928 (8th Cir. 2004), the Eighth Circuit Court of Appeals discussed the
federal common law standard for piercing the corporate veil between an
individual and a corporation.  The court cited with approval the two-prong

test applied in the Tenth Circuit: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations." Id. (quoting Greater Kansas City Roofing, 2 F.3d at 1052).  In determining whether the identity and the assets of the corporation and its stockholders have been blurred, the court considers the degree to which the corporate legal formalities have been maintained and the degree to which individual and corporate assets and affairs have been commingled.  Greater Kansas City Roofing, 2 F.3d at 1052.

Plaintiff contends that Dakota Wings is the alter ego of John Morin, and that the court should pierce the corporate veil to garnish lease payments to John Morin to satisfy the civil penalty assessed against Dakota Wings. Plaintiff has the burden of alleging and establishing concrete evidence of ownership or interest showing that the separate personalities of the corporation and the individual no longer exist.  1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.28 (1999).  "At a minimum, the defendant must own shares in the alleged alter ego corporation." Id. (citing Castillo v. First City Bancorporation of Texas, Inc., 43 F.3d 953, 963 (5th Cir. 1994)).  In Castillo, the court affirmed summary judgment in favor of the defendant because the plaintiff could not show an

6

ownership relation between the parties and the alleged alter ego corporation. Id. Thus, there was no corporate veil to pierce. Id.

In this case, the record indicates that Paul Morin, acting as Secretary of Dakota Wings, issued 400 shares to himself. Pl. Ex. 7. Both John and Paul Morin testified in a deposition that John Morin was the sole shareholder of the company. At the garnishment hearing, John Morin recanted that testimony, and stated that he had claimed to be the sole shareholder because he did not know what the word "shareholder" meant.[1] He stated that he thought it meant that he owned the building, not the shares in Dakota Wings. The corporate records do not indicate that Paul Morin sold or transferred his shares. Plaintiff does not allege that John Morin owns stock in Dakota Wings, but urges the court to pierce the veil on other grounds. Accordingly, the corporate veil cannot be pierced as to John Morin based on unity of interest between a shareholder and the corporation because John Morin is not a shareholder. See Castillo, 43 F.3d at 963.

Under some circumstances, the alter ego doctrine may be applied to a non-shareholder defendant, as long as the defendant exercises total control over the corporation. United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1113 n.7 (D. Del. 1988) (citing Krivo Indus. Supply Co. v. National Distillers & Chem. Corp., 483 F.2d 1098, 1104 (5th Cir. 1973)). Liability flows from

---

[1]Paul Morin recanted his testimony too, alleging that he was confused at the deposition because he was on medication.

control over the corporation, whether the control is based on the defendant's ownership of stock or status as a creditor.  Krivo Indus. Supply, 483 F.2d at 1104.  The court may disregard "paper technicalities of the relationship" if the non-shareholder defendant manages the corporation.  Id.

The control required to pierce the corporate veil in a creditor/debtor relationship "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."  Id. at 1106.  In order to pierce the corporate veil in this case, the court would have to find that John Morin completely dominated Dakota Wings and that Dakota Wings had no purpose other than to serve John Morin's personal interests.  Cf. Krivo Indus. Supply, 483 F.2d at 1106.

John Morin was a director of the corporation when it was incorporated, and he testified that he helped out around the shop at Dakota Wings.  He testified that Paul Morin managed the business and that it was "none of his business" what Paul Morin did with the company that was operated out John Morin's hangar.  The record indicates that John Morin did more than just help out around the shop.  He was authorized to write checks on the Dakota Wings account, and some corporate checks paid his personal expenses and were made payable to "cash."  John Morin testified that he signed the

corporate tax returns on behalf of Dakota Wings in 2000 and 2001, but the record shows that they are unsigned.[2]

The articles of incorporation indicate that John Morin lived in New Hampshire in 1991. He moved to South Dakota in 1999 to live with his parents after he had his leg amputated. He testified that before moving to South Dakota, he did not spend more than a week at a time at the hangar. He claimed that he did not learn about the EPA investigation and civil penalty against Dakota Wings until 2004, and that his father had previously told him that he was suing the EPA.

Although the testimony of both John and Paul Morin was full of inconsistencies and lapses of memory, there is not enough evidence in the record to show that John Morin controlled Dakota Wings to a degree that would permit the court to pierce the corporate veil and garnish his lease payments. Although John Morin did receive cash and payments for personal expenses from the Dakota Wings account, the record does not show that Dakota Wings functioned solely to benefit him. See Krivo Indus. Supply, 483

_____

[2] Plaintiff contends that Dakota Wings transferred the hangar to John Morin so that its creditors could not seize it. While Dakota Wings had serious financial problems, and the record indicates that assets were co-mingled and the corporate form was ignored, the hangar was sold a year before the investigation began and five years before entry of the default judgment. Plaintiff also alleged that SDSU had previously entered into leases with Dakota Wings and made lease payments to the corporation, and that John Morin did not sign the lease agreement as an individual until after the judgment against Dakota Wings was entered. While this would raise an inference that Dakota Wings and John Morin were using the corporate form to escape the civil penalty, no previous lease was admitted as evidence.

F.2d at 1106.  Because of John Morin's lack of ownership and control over the corporation, the court finds that there not such a unity of interest between John Morin and Dakota Wings to satisfy the first prong of the federal common law test adopted in <u>Minnesota Laborers Health & Welfare Fund</u>.  <u>See</u> 360 F.3d at 928.

Accordingly, the court finds that plaintiff has not met its burden of proof to justify piercing the corporate veil.  It is hereby

ORDERED that the garnishment of SDSU's lease payments to John Morin is dissolved.

Dated September 12, 2005.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

10